Ervin **BARKER**, Petitioner,

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**, Respondent.

**Misc. No. 1–72.**

United States District Court,
District of Columbia.

March 24, 1972.

William Burleson, Washington, D. C., for Ervin Barker.

Frank Martell, Washington, D. C., for Government Employees Ins. Co.

## MEMORANDUM OPINION AND ORDER

JOHN H. PRATT, District Judge.

This cause comes before the Court on petitioner's motion to confirm an arbitration award. Respondent, petitioner's insurance carrier, opposes the motion to confirm and moves the Court to vacate the award and direct a rehearing. The Court, having considered the oral arguments and all of the pleadings and memoranda submitted by the parties, finds that the award should remain undisturbed.

Respondent's contentions, which will be treated separately, are basically as follows:

(1) that the award is invalid on its face because the arbitrator did not render the award within thirty days of the close of the hearings;

(2) that the arbitrator was guilty of partiality and/or misconduct by accepting into evidence certain medical reports;

(3) that the arbitrator exceeded his powers or imperfectly executed them by misconstruing the specific language of the insurance policy.

### 1. Time of the Award.

At first glance, the American Arbitration Association Accident Claims Rules (hereinafter Rules) might appear to be definite and inflexible with respect to the time of the award. Section 28 of the Rules provides as follows:

"The Arbitrator shall render his Award promptly and, unless otherwise agreed by the parties, not later than thirty days from the date of the close of the hearings or the reopened hearings."

However, Section 22 of the Rules indicates that although hearings are generally declared closed when all the evidence has been presented

"[i]f briefs or documents are to be filed, the hearings shall be declared closed as of the final date set by the Arbitrator for the receipt of such briefs or documents. The time limit within which the Arbitrator is required to make his award shall commence to run upon the closing of the hearings."

Moreover, Section 25 of the Rules states:

"The parties may modify any period of time by mutual agreement. The AAA for good cause may extend any period of time established by these Rules except the time for making the Award. The AAA shall advise the parties of any such extension of time and its reason therefor."

Additionally, Section 24 of the Rules provides:

"Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state his objection thereto in writing shall be deemed to have waived his right to object."

Thus, upon closer inspection, the Rules appear to provide the parties and the arbitrator with a flexible procedure with respect to the time for making the award. Such flexibility is the very basis of arbitration and facilitates the use of this method of settling disputes.

With the foregoing in mind, we turn now to the case at bar. Before the conclusion of the hearings on February 8, 1971, the arbitrator requested that both parties file certain briefs. He announced that petitioner's brief was due on March 15, that respondent's brief was due on April 5, and that each would be given time to submit reply briefs—petitioner's due on April 10 and respondent's on April 15. In order to conform to Section 22, the arbitrator should have declared the hearings closed as of April 15. However, the following colloquy, recorded at page 85 of the transcript of the arbitration proceedings, reflects his decision to close the hearings on June 1:

"THE ARBITRATOR: If I ask you to have it [respondent's brief] available by the 5th of April, does that give you enough time?

"MR. MARTELL: Yes.

"THE ARBITRATOR: April 5. I am going to give each of you 5 days to reply. If it falls on a Sunday you can have the day after. Let's figure on April 10, 1971, and then you will have to April 15.

"MR. MARTELL: All right.

"THE ARBITRATOR: And then we will all prepare income tax.

"MR. BURLESON: Pass over to April 10. The rules say you have 30 days.

"THE ARBITRATOR: After submission of briefs.

"MR. BURLESON: We can agree to more time.

"THE ARBITRATOR: I would like—

"MR. BURLESON: Don't tie yourself down. I don't want you to render a decision—if we prepare it, I would appreciate your reading it.

"THE ARBITRATOR: I would like to prepare [sic] the proceedings closed as of June 1, 1971, and I will expect my brief—my order will be delivered to you at that time."

Respondent's counsel was present during this colloquy and had ample opportunity to object to the arbitrator's clear violation of Sections 22, 25 and 28 of the Rules. Counsel made no oral or written objection, but instead proceeded with the arbitration. Under Section 24, counsel's failure to object constitutes a waiver of the right to object.

This brings us to our final point in this discussion. Before the Court can grant respondent's motion to vacate the arbitration award, respondent must show that it has been prejudiced by the arbitrator's delay. *See* 9 U.S.C. § 10(c) (1970). Respondent has made no such showing. In fact, it appears that respondent was benefited by the delay. For if the arbitrator had adamantly held to his original or revised schedule, he could not have accepted respondent's brief, filed almost two and a half months after the due date. In another jurisdiction, the untimely filing of briefs has been held to be an expression of the parties' intention to extend hearings and to authorize the arbitrator to delay his award. *See* Nathan v. United Jewish Center, 20 Conn. Supp. 183, 129

A.2d 514 (1955). Such a rule is well-suited to this case, especially since respondent benefited from the delay.

In summary then, we find that respondent's first contention—that the award is invalid on its face because the arbitrator failed to render the award within thirty days of the close of the hearings—does not provide a basis upon which to reverse the arbitrator's award in view of the fact that (1) respondent waived this objection, (2) respondent contributed to the delay, and (3) respondent was not prejudiced by the delay.

### 2. *Admissibility of Evidence.*

Section 20 of the Rules provides, *inter alia,* that "[t]he Arbitrator shall be the judge of the relevancy and materiality of the evidence offered and conformity to legal rules of evidence shall not be necessary." The late Judge Holtzoff has had occasion to comment upon this settled principle of arbitration practice as follows:

"[I]t must be borne in mind that the common law rules of evidence are not binding and do not apply to proceedings before Arbitration Boards. They do not even entirely apply to the proceedings before administrative agencies, and certainly not to arbitration proceedings." Brotherhood of Railroad Trainmen v. St. Louis S. Ry., 252 F.Supp. 961, 962 (D.D.C.1966), affirmed, 127 U.S.App.D.C. 56, 380 F. 2d 603, cert. denied, 389 U.S. 927, 88 S.Ct. 288, 19 L.Ed.2d 279 (1967).

In light of the settled nature of this principle, respondent's attempt to upset the award on the grounds that the arbitrator showed partiality and abused his authority in admitting certain hospital records into evidence is entirely lacking in merit. In this connection we find that the declaration of the Second Circuit in Petroleum Separating Co. v. Interamerican Refining Corp., 296 F.2d 124 (1961) is applicable to the instant case:

"The arbitration was conducted in accordance with the rules of the American Arbitration Association, as agreed, and we can perceive no misconduct; the arbitrators appear to have accepted hearsay evidence from both parties, as they were entitled to do. If parties wish to rely on such technical objections they should not include arbitration clauses in their contracts. The appeal is quite insubstantial."

### 3. *Construction of the Policy.*

Respondent's third contention is that the award is void because the arbitrator erred in concluding that the policy's workmen's compensation exclusion does not preclude petitioner from receiving the full award. The pertinent language of the policy provides:

"(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by

(1) . . .

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."

Respondent claims that the specific language of this exclusion covers petitioner's receipt of medical and retirement benefits under D.C.Code §§ 4–525 and 4–527. Respondent argues that these provisions are in the nature of workmen's compensation benefits for District of Columbia policemen, and since petitioner, a former policeman, was covered by these provisions, his award must be reduced pursuant to the policy exclusion.

The workmen's compensation statute generally applicable to District of Columbia employees is the Federal Employees Compensation Act, 5 U.S.C. § 8101 et seq. (1970). However, District policemen and firemen are specifically excluded from coverage under this Act. 5 U.S.C. § 8101(1) (E) (iv) (1970). They are provided certain related, but

somewhat broader coverage under the District of Columbia Policemen and Firemen's Retirement and Disability Act, D.C.Code § 4–501 et seq. (1967). There are certain authorities which lend some support to the proposition that the District's Disability and Retirement Act is similar to workmen's compensation legislation in some respects, but this matter is by no means settled or self-evident. *See, e. g.*, Bradshaw v. United States, 143 U.S.App.D.C. 344, 443 F.2d 759 (1971) (which discusses the District's Act as it affects the maintenance of actions under the Federal Tort Claims Act); Anthony v. Norfleet, 330 F.Supp. 1211 (D.D.C.1971) (discussing a third-party's right to contribution and indemnity from the District); and Frye v. United States, 72 F.Supp. 405 (D.D.C.1947) (discussing the federal income tax consequences of monies received under the District's Act).

■ In any event, even if the Court were convinced that the arbitrator's conclusion amounted to a misapplication or misunderstanding of the law, we could not set aside the award. Neither errors of fact nor of law provide a sufficient basis for overturning an arbitration award under 9 U.S.C. § 10. *See, e. g.*, Raytheon Co. v. Rheem Mfg. Co., 322 F. 2d 173, 182 (9th Cir. 1963); Harvey Aluminum v. United Steelworkers, 263 F.Supp. 488 (C.D.Cal.1967).

## CONCLUSION AND ORDER

The foregoing represents the Court's findings of fact and conclusions of law and in accordance therewith, it is this 24th day of March, 1972,

Ordered:

(1) That respondent's motion to vacate the arbitration award heretofore entered is denied; and

(2) That petitioner's motion for judgment on the arbitration award is granted, and the Clerk of this Court is directed to enter judgment in favor of petitioner, Ervin Barker, against respondent, Government Employees Insurance Company, in the amount of $15,000, plus interest at six (6) percent from December 2, 1971, the date of the arbitration award, plus costs of this proceeding.